Crew, J.
This was an action by the defendant in error, Vincenzo DePascale, to recover damages for . personal injuries alleged to have been sustained by him in consequence of his having been wrongfully and forcibly ejected from a car of the plaintiff in. error while traveling thereon as a passenger. Upon the trial of this cause to a jury, a verdict was returned for DePascale for $450. A motion for-new-trial was overruled and judgment entered on said verdict by the court of common pleas. This judgment was affirmed by the circuit court. On the trial of',the;canse in the court of common pleas, Charles Lyttle, who was the conductor on duty and in .charge. *182 of the car from which DePascale was ejected, was called as a witness on behalf of the railway company, and testified as follows:
DIRECT EXAMINATION.
££Q. Mr. Lyttle, what is your fuil name? A. C. L. Lyttle.
££Q. "What is your occupation? A. Street car-ring.
“Q. Conductor upon the street car last July? A. I was.
“Q. Were you acting as conductor on the morning of July 8th? A. I was.
££Q. Did you see this plaintiff, Mr. Pascale, that morning? A. Yes, sir.
££Q. Where did you first see him? A. Duesing’s store.
££Q. Where was it? A. At Duesing’s store.
££Q. Did he board your car there? A. Yes, sir..
£ £ Q. Tell the jury just what way that was done-how he got on the car. A. The car was stopped, and a passenger got off, and I gave the bell a pull to start the car, and Pascale was up along the car, and boarded the car while it was moving; as soon as he got on, he asked me what I started the car for before he got on; I told him I did not see him; he was not .at the place he said he was, and began arguing with me, swore he could break my face, and all such stuff, ;and finally called me a damned bastard and a s— of .a b — , and I took him by the coat and threw him off the car.
££Q. Did he swear any there? A. He did.
££Q. Were there any ladies on that car? A. There were ladies on the front of the car.
*183 “Q. What did you do to him? A. Pushed him off the ear.
‘ ‘ Q. How did you take a hold of him ? A. Took him by, I think, the front of the coat.
‘ ‘ Q. And then where did your car go ? A. Passed on, never stopped.
‘ ‘ Q. Oh, I guess that is all. ’ ’
There was some conflict in the evidence as to just what was said Jby DePascale to Lyttle. Two witnesses say that the language testified to by Lyttle wqs used by DePascale. DePascale himself denies having used any such language towards Lyttle, and in this he is corroborated by the testimony — negative in form — of at least two witnesses who were at the time, passengers on said car and heard the altercation between DePascale and the conductor Lyttle. At the conclusion of the evidence, and before argument, counsel for the railway company submitted to the court the following request:
“Defendant requests the court to instruct the jury, that in determining the question of compensatory damages to this plaintiff, they may consider, in mitigation thereof, the provocation brought about by the insulting words used by the plaintiff to defendant, the conductor, if they find such words were used. ’ ’
The court refused to give this instruction, and thereafter in its general charge, having theretofore withdrawn from the consideration of the jury the question of allowing exemplary damages, instructed the jury in part as follows:
“If this plaintiff used the words that are claimed here by the witnesses who have testified as to them, in relation to the names he called the conductor, it is no justification of the defendant railway company *184 for' any injury to Ms person that may have accrued to the plaintiff by reason of being forcibly ejected from a moving carl It may have been a perfectly natural thing on the part of the conductor to have done it, in-ca§e these words were used, but under our law words of that Mnd are never a justification, conclusively, as to damages that may result from an assault . and battery following. * * * If this man, the. plaintiff, used the words attributed to him,, on the car, the conductor had the right to do either' one- of two things; one to arrest him and deliver Mm to the police authorities, or he had the right to eject, him from the car, but in ejecting he must first stop the ear, and then use only the necessary force to remove him; it would not justify him in causing the-injury to. the plaintiff, by removing him therefrom when the car was running, if the effect of that forcible ejection was to so injure him.”
To the refusal to charge as requested, and to the-charge as given, counsel for the railway company, at. the time excepted, and now assigns the action of the-court in that behalf, as error. The theory of the instruction asked by counsel for the railway company is, that in an action for personal tort, words of provocation spoken by the plaintiff should be taken and considered by the jury in mitigation of actual or compensatory damages, as well as in mitigation of exemplary or punitive damages. Whether or not. they may properly be so taken and considered and such effect' be given them, is the question here presented by this request to charge.' On this proposition the authorities are not in entire harmony. While, in perfect accord upon the proposition that mere oral provocation or.abusive language, is not a defense and will not of itself justify the offended party in *185 assaulting, or in inflicting injury upon the person so offending, there is some conflict and contradiction in the decisions of the courts of last resort on the question whether mere provocative language can have the effect to mitigate or reduce compensatory damages, or whether it is to be limited in its office and effect to the mitigation and reduction of punitive damages, in those cases where punitive damages may be properly awarded. We think, that the better rule and the clear weight of authority, is in favor of the proposition that actual or compensatory damages, are not in any case, subject to mitigation, by proof of mere provocation. The malice of the defendant can never have the effect to increase the damages which a plaintiff may recover for actual pecuniary loss or injury, but such damages are wholly unaffected by either the presence or absence of malice on the part of the defendant. How then, or upon what principle can it reasonably be held that provocation on the part of the plaintiff, which does not in law amount to a justification, may mitigate such damages. To so hold would, in effect, be to allow such provocation to be used as a defense, and to thus permit by indirection that which could not be done directly. A leading case on this subject is Goldsmith v. Joy, 61 Vt., 488, in which numerous authorities, both English and American, are collected and reviewed. The learned judge who delivered the opinion in that case, in discussing the question whether words of provocation could properly be held to mitigate compensatory damages, says :
“If provocative words may mitigate, it follows that they may reduce the damages to a mere nominal sum and thus practically justify an assault and battery. But why under this rule may they not fully *186 justify? If in one case, the provocation is so great that the jury may award only nominal damages, why, in another, in which the provocation is far greater, should they not be permitted to acquit the defendant and thus overturn the well settled rule of law, that words cannot justify an assault. On the other hand if words cannot justify they should not mitigate. A defendant should not be heard to say that the plaintiff was first in the wrong by abusing him with insulting words, and therefore, though he struck and injured the plaintiff, he was only partly in the wrong and should pay only part of the actual damages. ’ ’
The court in this case held that words of provocation would not justify an assault, nor could they be given or considered in mitigation of actual or compensatory damages. To the same effect are the following authorities: Osler v. Walton, 67 N. J. Law, 63; Prentiss v. Shaw, 56 Me., 427; Railroad Co. v. Barger, 26 L. R. A., 220; Wilson v. Young, 31 Wis., 574; Mangold v. Oft, 63 Neb., 397; Johnson v. McKee, 27 Mich., 471; Donnelly v. Harris et al., 41 Ill., 126.
Of the cases cited in the brief of counsel for plaintiff in error, which it is claimed hold a contrary doctrine, we need, only notice the case of Robison v. Rupert, 23 Pa. St., 523, inasmuch as the principle which governed the determination of that case, seems to have been the same that controlled the decisions in the other cases cited. That principle is this: that the doctrine of punitive damages should be mutual and reciprocal, and that because in cases of assault, punitive damages are recoverable from malicious defendants, that like treatment, by way of punishment, should be meted out to a plaintiff who provokes an *187 assault upon himself, hy giving him, in damages, less than will compensate him for the actual loss or injury he has suffered. However much of reason there may he in this in good morals, we submit it is not good law. It is a recognized and established principle of the law of torts, founded as we think in sound reason, that the compensation awarded to one who is injured, either in person or property, hy the wrongful and unlawful act of another, shall at least be equivalent to, and should in all cases be commensurate with, the loss or injury actually sustained. It may not, therefore, properly he said, in any case where the law awards or permits the recovery of damages, that the damages recovered as compensation shall be for a part only of the loss or injury sustained by the plaintiff. Yet such would necessarily he the effect and result of the adoption of a rule that would permit mere provocation, which in law is neither a justification nor defense, to mitigate and reduce the amount of recovery to a sum less than full compensation. Certainly that which will not justify or warrant an assault, cannot in law, excuse the making of full compensation for the injury actually inflicted by such assault. In this case the jury was informed by the court, “that under the circumstances of the case he would not submit to them any question of punitive damages, or any question of damages in favor of the plaintiff for humiliation in being ejected from the car.” And in the charge as given, on the matter of damages, he submitted to the jury only the question of allowing to plaintiff his actual or compensatory damages. Inasmuch then as the plaintiff, if entitled to recover at all, was entitled to recover full compensation for the injury actually sustained by him, the instruction requested by the plaintiff in *188 error was not a proper instruction and the refusal to-give it was not error. Neither do we think that in. the charge as given there was anything of which the plaintiff in error'may rightfully he heard to complain, for it would seem to us, upon the undisputed facts of this case, that the charge was quite as favorable to the railway company as it had the right to ask. It is further suggested in this case, although not very strenuously contended for or insisted upon by counsel for plaintiff in error, that DePascale was. without right to recover against the railway company, because the act of its conductor, which caused the injury complained of, was not within the scope of his employment. As to such claim, it is enough to-say, that it finds no warrant in the testimony in this-case, and if it did, such claim is fully met and answered, against the contention of plaintiff in error,, by the decisions of this court in the cases of Catering Co. v. Coit, 55 Ohio St., 398, and Business College Co. v. Lloyd, 60 Ohio St., 448. We find no error in this, record to the prejudice of the plaintiff in error and. the judgment of the circuit court is therefore

Affirmed.

Spear, C. J., Shauck, Price and Summers, JJ.,, concur.
Davis, J., dissents.